UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


**JESSIE HARLEY**
    Plaintiff

v.                                                                         No. 3:09CV-00876-CRS

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by John Dale. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 14, respectively. In addition, the plaintiff has filed a reply (Docket Entry No. 16). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on September 2, 2009, by the Appeals Council. In support of its decision denying Title II and Title XVI benefits, the Appeals Council entered the following numbered findings:

    1. The claimant met the special earnings requirements of the Act on January 18, 2006, the date the claimant stated he became unable to work and met them through December 31, 2008. The claimant has not engaged in substantial gainful activity since January 18, 2006.

    2. The claimant has alleged the following impairments: pancreatitis, right index finger laceration, back pain, depression and heart condition.

    3. The claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision.

4. The claimant does not have any medically determinable impairment or combination of impairments which has more than a minimal effect on his ability to do any work activity. Therefore, the claimant does not have a severe impairment (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant is not disabled as defined in the social Security Act at any time through the date of the Administrative Law Judge's decision (April 19, 2008).

(Administrative Record (AR), p. 7).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Procedural history**

In October of 2004, the plaintiff underwent laparoscopic cholecystectomy, or removal of the gall bladder (AR, p. 474). The plaintiff alleges disability commencing in January of 2006, the month he ceased working, was admitted, and released from the Jewish Hospital in Shelbyville, Kentucky, due to symptoms of acute pancreatitis (AR, p. 285). According to the plaintiff's treating physician, Thomas Crain, as of January of 2006, the plaintiff was actually suffering from "acute on chronic [i.e., recurring and long-term]" pancreatitis, a condition resulting in periodic exacerbations of "severe abdominal pain and cramping, nausea [and] diarrhea" and a "need to lie down for a period of time or leave work for the rest of the day" (AR, pp. 479-480). In May of 2006, the consultative examiner selected by the Commissioner, Monte Martin, M.D., found that there was evidence that the plaintiff suffers from a peptic ulcer that radiates pain into his back (AR, p. 388).

The plaintiff testified that he is disabled because the abdominal and back pain necessitates that he lie down during the work day, and the diarrhea necessitates unscheduled bathroom breaks. We take judicial notice that frequent absences from the work station may be intolerable to employers. Unfortunately, the plaintiff was not specific as to the frequency and duration of needed rest and bathroom breaks, nor did ALJ Gloria York or counsel elicit clarification. The plaintiff simply stated that it occurred "a lot" (AR, pp. 37 and 43). The plaintiff did not allege any particular exertional limitation associated with his pancreatitis. However, he did indicate the presence of non-exertional manipulative limitations due to laceration and re-attachment of the index finger of his non-dominant right hand.

Only two vocational hypothetical questions were given at the administrative hearing. The first hypothetical established that an individual who can perform "medium" work and has difficulty grasping and gripping objects with the right non-dominant upper extremity would be unable to perform the plaintiff's past relevant work (AR, pp. 54-55). However, such an individual could perform a significant number of other jobs in the national economy. The second hypothetical indicated that an individual who is restricted to "light" work and with the following non-exertional limitations would be unemployable (AR, p. 56):

> **ALJ:** [The plaintiff] testified that there would be at least many days, let's say half, 15 days of the month, that he would be experiencing diarrhea and would have to use the restroom four or five times a day during an eight hour workday. He also indicated that he must lie down several times during an eight hour workday in order to relieve pain.

As to the case-dispositive issue of the frequency and duration of the plaintiff's need for rest and bathroom breaks due to chronic pancreatitis, the magistrate judge submits that these hypotheticals represent what might be characterized as unhelpful "extremes." The first hypothetical contemplated

6

no such restriction, and the second one contemplated a disabling level of restriction. Unfortunately, neither the ALJ nor counsel explored the vocational impact of more specific, plausible, and moderate limitations, for example, four or five unscheduled bathroom breaks lasting ten minutes each and occurring two days per month on average.

On April 19, 2009, the ALJ issued her written decision, finding that the plaintiff's "severe" chronic pancreatitis restricts him to "light" work and precludes past relevant work. Nevertheless, the ALJ concluded that a fifth-step finding of "not disabled" was supported by a direct application of Medical-Vocational Rule 202.21 (AR, p. 24). Rule 202.21 contemplates a maximum exertional capacity for "light" work. A direct application of the medical-vocational rules of Appendix 2 of the regulations is warranted only if substantial evidence supports a conclusion that a claimant's non-exertional impairment does not "significantly limits his ability to do a full range of work at a designated level." *Kimbrough v. Secretary*, 801 F.2d 794, 796 (6th Cir., 1986). Applying *Kimbrough* to the present case, we conclude that the ALJ's ultimate finding of lack of disability was supported only to the extent substantial evidence supported a finding that the plaintiff's diarrhea and abdominal pain was vocationally insignificant. The latter finding is at odds with the ALJ's finding of "severe," or vocationally significant, chronic pancreatitis and her acknowledgment that the plaintiff's "medically determinable impairment [i.e., pancreatitis] can reasonably be expected to produce the alleged symptoms [i.e., significant diarrhea and abdominal pain]" (AR, p. 23).

The plaintiff appealed these matters to the Appeals Council. Perhaps sensing the tensions, if not outright errors, in the ALJ's decision alluded to in the previous paragraph, on September 2, 2009, the Appeals Council decided to vacate the ALJ's decision and assert its own decision as the Commissioner's final decision. Like the ALJ, the Appeals Council acknowledged

that the plaintiff "does have a medically determinable condition [i.e., chronic pancreatitis] which could reasonably be expected to produce the symptoms alleged" (AR, p. 5). However, the Appeals Council concluded that the plaintiff does not have "[1] any medically determinable impairment or combination of impairments which [2] has more than a minimal effect on his ability to do any work activity. Therefore, the claimant does not have a severe impairment" (AR, p. 7). In other words, what was implicit in the ALJ's decision (i.e., no vocationally-significant diarrhea and abdominal pain that would prohibit a direct application of the Appendix 2 rules) was made explicit by the Appeals Council (i.e., no "severe," or vocationally significant, impairment). Whereas the ALJ had denied the claim at step 5, the Appeals Council found that a step 2 denial was supported.

**Findings and conclusions**

The Appeals Council's approach is undeniably simpler than the ALJ's. Nevertheless, the magistrate judge submits that the underlying problem or tension in the ALJ's decision was not really cured by a more straightforward approach. To the extent the Appeals Council's finding of no severe impairment was predicated upon a finding of no [1] "medically determinable impairment" (AR, p. 7), the latter finding is at odds with the diagnosis of the treating physician, Dr. Crain, the treatment records of the Jewish Hospital, and even the findings of the Commissioner's consultative examiner, Dr. Martin (AR, pp. 285-286, 479-480, and 390). To the extent the Appeals Council's position is that an acknowledged "chronic" condition (i.e., pancreatitis) does not [2] have more than a minimal effect on his ability to do any work activity, that position appears inherently suspect inasmuch as "chronic" <u>means</u> tending to recur over long periods of time. In any event, a finding of no vocationally-significant effects is inconsistent with Dr. Crain's finding that the plaintiff's chronic

8

pancreatitis results in periodic exacerbations of "severe abdominal pain and cramping, nausea [and] diarrhea" and a "need to lie down for a period of time or leave work for the rest of the day" (AR, pp. 479-480). The Appeals Council did offer the observation that the plaintiff had been able to maintain a normal weight, which it found to "strongly suggest[] that the claimant's pancreatitis is under control" (AR, p. 6). However, the undersigned finds that the Appeals Council lacked the medical expertise to say that, simply because a person has a normal weight, he does not suffer from vocationally-significant pancreatitis.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for further administrative proceedings and a new decision consistent with this report in which the Commissioner should, without limitation: 1) obtain testimony from the plaintiff as to the frequency and duration of his need to lie down during the work day due to abdominal and back pain and his need for unscheduled bathroom breaks due to diarrhea associated with his diagnosed impairment of chronic pancreatitis, 2) obtain an opinion from Dr. Cain or any other acceptable medical source as to the foregoing issues, 3) enter specific findings, and 4) explore the vocational impact thereof.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).